IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Gonzales Robin, | No. CV-09-955-PHX-FJM (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (docket # 1) Respondents have filed an Answer, docket # 11, to which Petitioner has replied (docket # 14). For the reasons set forth below, the Petition should be denied.

**I. Factual and Procedural Background**

    **A. Underlying Criminal Conviction**

On February 3, 1974, Petitioner and a co-defendant, Daniel Verdugo, entered a Big Eagle Market convenience store in Phoenix, Arizona. *See State v. Verdugo*, 112 Ariz. 288, 289, 541 P.2d 388, 389 (1975), attached as Respondents' Exh. A. After Verdugo announced their intention to rob the store, the proprietor drew a gun. (*Id.*) Shots were fired, and Petitioner and Verdugo fled the store. (Respondents' Exh. A) A person outside the store saw two people run out of the store, and one of the men put a gun to his back and pushed him into the store. (Respondents' Exh. A) Petitioner and Verdugo fled in a car driven by Verdugo's cousin. (Respondents' Exh. A) The proprietor of the store died from gunshot wounds. (Respondents' Exh. A)

1    Based on the foregoing incident, the State of Arizona charged Petitioner and the
2 others with first-degree murder. In a separate trial, Petitioner was found guilty on May 17,
3 1974. (Respondents' Exh. D, internal attachment number 1 to Affidavit of Susan Kaye) On
4 June 24, 1974, the trial court sentenced Petitioner to life imprisonment with no possibility of
5 parole for 25 years. (*Id.*)

6    Petitioner filed a direct appeal to the Arizona Supreme Court.[1] On December
7 17, 1975, the Arizona Supreme Court reversed Petitioner's conviction and remanded for a
8 new trial finding "it was error for the trial judge to have communicated with the jury in the
9 absence of the defendant and counsel." *State v. Robin*, 112 Ariz. 467, 543 P.2d 779 (Ariz.
10 1975) ("*Robin I*"), attached at Respondents' Exh. D as internal attachment number 2 to
11 Affidavit of Susan Kaye ("Kaye Affidavit"). Petitioner's second trial ended in a mistrial
12 after the jury could not reach a verdict. *See State v. Robin*, 115 Ariz. 9, 10, 562 P.2d 1376,
13 1377 (Ariz.Ct.App. 1977) ("*Robin II*").

14    On April 27, 1976, Petitioner entered into a plea agreement pursuant to which he
15 pled guilty to second-degree murder. (Respondents' Exh. D - internal attachment 4 to Kaye
16 Affidavit) On May 25, 1976, the trial court sentenced Petitioner to between 75 years to 75
17 years and 1 day imprisonment, to date from March 14, 1974. (Respondents' Exh. D, internal
18 attachment 3 to Kaye Affidavit)

19    Petitioner filed a direct appeal[2] raising one claim - that he was not advised that
20 "intent to kill" is an element of second-degree murder. On April 5, 1977, the appellate court
21 rejected this claim and affirmed Petitioner's conviction. *See Robin II*, 115 Ariz. at 10-11,
22 562 P.2d at 1377-78 ) (stating that "[w]hile appellant persisted in his claim of innocence

---

[1] *See Crowell v. Knowles*, 483 F.Supp.2d 925, 927-33 (D.Ariz. 2007) (discussing the changes in Arizona law which had previously authorized a direct appeal to the Arizona Supreme Court in cases in which the defendant was sentenced to life imprisonment.)

[2] Before September 30, 1992, an Arizona criminal defendant could directly appeal following a guilty plea. Thereafter, a pleading defendant may only seek direct review in an "of-right" proceeding pursuant to Ariz.R.Crim.P. 32. *See Moreno v. Gonzalez*, 192 Ariz. 131, 134 n. 1, 962 P.2d 205, 208 n. 1 (Ariz. 1998).

[under *North Carolina v. Alford*, 400 U.S. 25, 37-39, 1970)], he felt that if he went to trial again he would be found guilty of first degree murder. There was a factual basis for first degree murder and the entire factual milieu before us points to a voluntary, intelligent and well-informed plea."); (Respondents' Exh. D, internal attachment number 4 to Kaye Affidavit).

## B. Escape and Recalculation of Sentence

On November 6, 1983, Petitioner escaped from the Arizona Department of Corrections in Douglas, Arizona. (Respondents' Exh. D, Kaye Affidavit at ¶ 7) Nearly 12 years later, on October 13, 1995, the Santa Cruz County Sheriff arrested Petitioner and returned him to the Arizona Department of Corrections that same day. (*Id.*) Petitioner was on escape status for 4,359 days. (*Id.*) Pursuant to applicable statute at the time of Petitioner's return to prison, A.R.S. § 13-709(D) (West 2001), the Arizona Department of Corrections recalculated Petitioner's sentence to include the 4,359 days of escape time.[3] (*Id.* at ¶ 9) At the time of Petitioner's escape, with various early-release credits, in addition to credit for actual time served, Petitioner was scheduled for release in 2005. (Respondents' Exh. Q at 4) His new release date, calculated after he was returned to prison, is July 11, 2017. (Respondents' Exh. Q at 4)

Following the recalculation of his sentence, on September 26, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the Maricopa County Superior Court. (Respondents' Exh. B, internal attachment a) Petitioner argued that he was being held in custody unlawfully beyond his old release date because (1) he was never charged with "failure to return" from work furlough or temporary release under A.R.S. § 41-1604.11(J) (Supp. 2008); (2) his sentence was increased without due process; (3) his rights under the Sixth Amendment were violated when these actions were taken because Petitioner was not

---

[3] Arizona Revised Statute § 13-709(D) provide that "[i]f a person serving a sentence of imprisonment escapes from custody, the escape interrupt the sentence. The interruption continues until the person is apprehended and confined for the escape or is confined and subject to a detainer for the escape." A.R.S. § 13-709(D) (West 2001).

- 3 -

provided counsel; and (4) his rights to Equal Protection were violated. (*Id.*)  The trial court construed the state-habeas petition as a petition for special action. (*Id*.)  Petitioner opposed the characterization of his petition as a special action. (Respondents' Exh. B, internal attachment c)

Despite Petitioner's opposition, the trial court continued treating the action as a Petition for Special Action and set a briefing schedule. (Respondents' Exh. C)  On June 13, 2006, the trial court[4] summarily denied the petition. (Respondents' Exh. F)

On July 11, 2006, Petitioner filed a document in the Superior Court entitled, "Petition for Review of Ruling of Superior Court on Habeas Corpus Petition," (Respondents' Exh. G, internal exhibits a and d)  The proceeding was transferred to the Arizona Court of Appeals, and this document became Petitioner's opening brief on appeal. (Respondents' Exhs. G, H, I-J, L-N, docket # 11 n. 6)  After the State answered and Petitioner replied, on December 26, 2008, the Arizona Court of Appeals affirmed the denial of the state-habeas petition. (Respondents' Exhs. O, P, Q)  The Court of Appeals stated that:

> Where a liberty interest is created by a statute, this interest is protected by the due process clause, thereby requiring procedural due process to deprive a person of that interest. *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).  The loss of good-time credits by a prisoner is such a liberty interest, requiring that the 'minimum requirements of procedural due process . . . be observed." *Wolff v. McDonald*, 418 U.S. 539, 558 (1974).  Thus, in order to punish Robin for escape by adding additional time to his sentence and/or depriving him of good-time credits he earned prior to the escape, some proceeding would have been necessary. *See, e.g., Fox v. Ariz. Bd. of Pardons and Paroles*, 149 Ariz. 172, 174, 717 P.2d 476, 478 (1986) (prisoner failed to return from trustee furlough and upon his recapture, he was convicted of escape, sentenced to two additional years, and forfeited his earlier-earned good-time credits.)  In this case, Robin was not forced to forfeit any earned credits; he simply did not earn any additional credits while he was on escape status.
>
> Good-time and double-time credits can only be earned while a prisoner is serving time in state prison. *Jones v. State ex rel. Eyman,* 19 Ariz. App. 26, 27, 504 P.2d 949, 950 (1972).  This court additionally has held that a prisoner could not earn double-time credits for working in a position of confidence and trust while on mandatory release. *See State v.*

---

[4] The Honorable Margaret H. Downie presided.

- 4 -

*Thomas*, 131 Ariz. 547, 550, 642 P.2d 892, 985 (Ariz.Ct.App. 1982); *State v. Robertson*, 131 Ariz. 73, 638 P.2d 740 (1981).

When a prisoner escapes, 'the escape interrupts his sentence [and the] interruption continues until the person is apprehended and confined for the escape or is confined and subject to detainer for the escape.' A.R.S. § 13-709D. Robin does not dispute this, but rather asserts he is entitled to a proceeding to determine whether he did, in fact, escape in the criminal sense, before the statute can be applied to toll his sentence. However, in spite of Robin's assertion to the contrary, there is no requirement in the statute that the state charge and convict the prisoner of escape in order to justify tolling his sentence in his absence. Furthermore, A.R.S. § 13-709D merely codifies the rule that a prisoner is not serving his prison sentence when he is on escape and the tolling of Robin's sentence was not punishment for his escape.

Robin does not deny he escaped custody; he merely implies he lacked the requisite mental state for a criminal conviction. He also notes in his reply brief that the failure of a defendant to deny guilt does not by itself warrant an inference of guilt, citing *Griffin v. California*, 380 U.S. 609, 615 (1965). However, Robin has not been charged with any additional crime, nor has he been disciplined or otherwise penalized for escaping; he simply was not given credit for time he did not serve or otherwise earn credit.

(Respondents' Exh. Q at 7-10).

Petitioner sought review in the Arizona Supreme Court which was summarily denied on April 7, 2009. (Respondents' Exhs. R-T)

### C. Federal Petition for Writ of Habeas Corpus

On May 4, 2009, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims:

> (1) Petitioner's First Amendment rights were violated because the "State and its agents" extended Petitioner's sentence without providing him "meaningful access to the courts."
>
> (2) Petitioner's Fifth Amendment right to due process was violated because the State did not provide notice and a hearing before extending Petitioner's mandatory release dated.
>
> (3) Petitioner was denied his Sixth Amendment right to counsel at the "beginning stages of this habeas action."
>
> (4) Petitioner was denied his First, Fifth, and Sixth Amendment rights by the recalculation of his sentence without meaningful access to the courts and with "no representation."

(docket # 1 at 6-9)

1    Respondents assert that Plaintiff's claims lack merit.[5] (docket # 11)  The Court
2 will address the merits of Petitioner's claims after setting forth the standard of review.

**II.  Standard of Review**

Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not entitled to relief unless he demonstrates that the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Knowles v. Mirzayance,* 556 U.S. ___, 129 S.Ct. 1411, 1414-15 (2009); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts must look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Thus, a federal court cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  Even if the state court neither explained its ruling nor cites United States Supreme Court authority, the reviewing federal court must examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S.

---

[5] Respondents do not raise any defenses, such as the statute of limitations or exhaustion. Rather, they address the merits of Petitioner's claims.  Likewise, the Court will proceed to the merits of Petitioner's claims. *See* 28 U.S.C. § 2254(b)(2) (stating that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

A state court's decision is "contrary to" Supreme Court precedent if the state court applies a rule "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell*, 540 U.S at 14 (citations omitted); *Brown v. Patton,* 544 U.S. at 133, 141 (2005). A state court decision amounts to an "unreasonable application of" Supreme Court precedent if the state court applies that precedent in "an objectively unreasonable manner." *Williams v. Taylor*, 529 U.S. 362, 410, (2000); *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of state law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable.") "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id*.; *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (stating that [t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.").

Additionally, a state court's factual determinations "shall be presumed to be correct," on federal habeas review, and Petitioner can overcome that presumption only by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000). The burden placed on petitioner is considerable because "this standard means that the federal habeas court must

'more than simply disagree' with the state fact-finding." *Washington v. Schriver*, 255 F.3d 45, 55 (2nd Cir. 2001) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983)).

Where a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, the reviewing court must next determine whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

In his case, the Arizona Supreme Court's summarily denial of review makes the Arizona Court of Appeals' decision, Respondents' Exh. Q, the operative decision for federal habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

### III. Analysis of Petitioner's Claims

All four of Petitioner's claims are based on the premise that the Arizona Department of Correction's recalculation of his release date to account for the time during which he was escaped from prison violates federal law. (docket # 1 at 6-9; docket # 14) The Arizona Courts rejected Petitioner's claims, finding that Petitioner was not entitled to a hearing or other process before his sentence was recalculated to reflect the time that service of his sentence was interrupted due to Petitioner's escape. Petitioner has not shown that the Arizona Courts' rejection of Petitioner's claims is either contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254. Likewise, Petitioner has not shown that the state courts' decision is based on an unreasonable determination of the facts. Accordingly, he is not entitled to habeas corpus relief.

#### A. Ground One - First Amendment Access to the Courts

In Ground One, Petitioner argues that his First Amendment rights were violated because "the State and its agents have extended [his] sentence without providing meaningful access to the court and by unreasonable interpretati[on] of present constitutional law." (docket # 1 at 6) Contrary to Petitioner's assertion, he has not been denied access to the courts and the recalculation of his sentence comports with Supreme Court precedent.

As an initial matter, Petitioner filed numerous pleadings in state court challenging the recalculation of his sentence following his escape including: a petition for writ of habeas corpus in state court; a motion opposing the assessment of filing fees related to his state petition for writ of habeas corpus; a petition for review by the Arizona Court of Appeals; and a petition for review in the Arizona Supreme Court. (Respondents' Exh. B, I, G, R) The foregoing indicates that Petitioner has had access to the courts to challenge his sentence.

As Respondents note, Petitioner's first ground for relief may also be construed as asserting that he was denied access to the courts because the State never charged him with, or convicted him of, the crime of escape under A.R.S. § 13-2501. This claim does not provide a basis for habeas corpus relief. "While an inmate's absence may not conclusively establish an 'escape' in terms of culpability, *see Downes v. Norton*, 360 F.Supp. 1151, 1154 (D.Conn. 1973), it does establish an interruption in service of sentence, which in turn requires an adjustment to reflect the period he was absent." *United States v. Luck*, 664 F.2d 311, 313 (D.C.Cir. 1981). The State was not required to find Petitioner guilty of escape before adjusting his release date to account for the time he was absent. In *Anderson v. Corall*, the United States Supreme Court analogized the case of a revoked parolee to an "escaped convict" and held that termination of parole requires service of the remainder of the originally imposed sentence without reduction of the sentence for time spent on parole. 263 U.S. 193, 196 (1923), *reaffirmed in Zerbst v. Kidwell*, 304 U.S. 359, 361 n. 5 (1938). The Court explained that the "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence. Escape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as part of the term." *Corall*, 263 U.S. at 196. The Supreme Court's decision in *Corall,* that time spent on escape does not constitute service, is the clearly established federal law under § 2254(d) that applies in this case. *See Ogg v. Klein*, 572 F.2d 1379, 1381-82 (9th Cir. 1978) (citing *Corall*, 263 U.S. 193) (finding that youth offender's escape tolled his youth offender's sentence); *Willis v. Meier*, 435 F.2d 852, 853 (9th Cir.

1970) (observing that the Ninth Circuit has adopted the *Corall* Court's analogy between a violation of parole and an "escape from prison during which the sentence does not run.")

The record reflects that Petitioner has not been denied his First Amendment right of access to the Courts. Additionally, the recalculation of his sentence is consistent with Supreme Court precedent. *See Corall*, 263 U.S. at 196.

**B. Ground Two**

In Ground Two, Petitioner argues that his Fifth Amendment right to due process was violated because he was "not notified" and no hearing was held "before a tribunal with the power to decide the issue." (docket # 1 at 7) Petitioner appears to argue that he should have received notice and a hearing before his sentence was recalculated to reflect the time he was an escapee.

As the State court found, the lack of a hearing did not give rise to a due process violation because Petitioner did not have a legitimate claim of entitlement to receiving credit towards service of his sentence while he was absent from prison. (Respondents' Exh. Q) "The computation of time served in custody or on a sentence is a function of the prison authorities in the first instance." *Luck*, 664 F.2d at 312. "It has been the longstanding practice in such escape cases that the prison authorities, without a formal procedure before the sentencing court, simply give no credit for the period the prisoner absented himself from the service of his sentence . . . ." *Id*. (citing *United States v. Liddy*, 510 F.2d 669, 684 n. 10 (D.C.Cir. 1974) (MacKinnon, J., dissenting). Petitioner argues that this practice, which was followed in his case, violated his right to procedural due process under the Fourteenth Amendment. (docket # 1)

The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (stating that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995). In *Wolff v. McDonnell*,

418 U.S. 539 (1974), the Court held that prisoners were entitled to certain minimum due process protections, including a hearing, when prison officials proposed to revoke good time credits for alleged misconduct. Some lower courts have applied *Wolff* to proposed forfeitures of good-time credits based on a prisoner's escape. *Luck,* 664 F.2d at 313 (citing cases).

However, in this case, Petitioner does not argue that he was deprived of good-time credits or that he was punished upon his return to prison. Rather, he argues that his sentence was extended to reflect the number of days his conduct caused him to be absent from prison.

In a similar situation, the court in *Luck* noted that:

> Appellant's claim . . . is only that his sentence was extended to reflect the number of days his conduct caused him to be absent from the custody of the Attorney General, and there is no claim of administrative error in the recomputation. On similar facts, . . . the Fifth Circuit summarily rejected a challenge to the extension by the Bureau of Prisons of a prisoner's sentence, holding that the notation by prison officials that service of the sentence was inoperative during the period of escape was a mere clerical entry on the length of actual service. *See Theriault v. Peek*, 406 F.2d 117 (5th Cir. 1968),[6] *cert. denied*, 394 U.S. 1021, 89 S.Ct. 1644, 23 L.Ed.2d 47 (1969). This procedure is similar to prison officials determining the date service of a sentence begins by noting the date of a prisoner's arrival at the penitentiary . . . While both [the forfeiture of good-time credits discussed in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and the extension of a sentence on account of an escape] affect the length of confinement, the former is a punitive measure based on a finding of culpability, while the latter is a simple matter of counting the number of days a prisoner was absent from custody to which his sentence committed him . . . . Even were this court to hold that a hearing is required where an inmate alleges error in the recomputation or disputes the fact of his absence, where as here no such claims are made and the fact of the inmate's absence and its

---

[6] "Escape from prison interrupts service, and the time elapsing between escape and retaking contribute nothing to the service of the sentence. The notation complained of is no more than a clerical entry relevant to a determination of the length of appellant's actual service. The appellant having alleged no discrepancy between the notation and the actual period of his escapee status, the district court committed no error in denying his petition." *Theriault*, 406 F.2d at 117, *cited with approval* in *In re Garmon*, 572 F.2d 1373, 1376 (9th Cir. 1978) (holding that a civil-contempt sentence can be imposed on a witness who is already serving a criminal sentence, and authorizing the interruption of the criminal sentence during the contempt-based confinement).

- 11 -

  duration (1832) days is established by the record, ordering a holding of a hearing would be a futile exercise.

*Luck*, 664 F.2d at 313. As in *Luck*, Petitioner challenges the fact that his sentence was extended to reflect the number of days he was absent from prison as an escapee. Petitioner does not allege that the computation of the days he was absent, and thus not serving his sentence, is inaccurate. Accordingly, the clerical act of recalculating Petitioner's sentence to account for days he was absent did not require a hearing. *See Luck*, 664 F.2d at 313; *Theriault*, 406 F.2d at 117.

### C. Ground Three

In Ground Three, Petitioner argues that the "Sixth Amendment has been violated and Petitioner has been denied counsel at the beginning stages of this habeas action." (docket # 1 at 8) Petitioner further argues that the State "and its agents" were not "in compliance with both statutory and constitutional law." (docket # 1 at 8)

Petitioner's Sixth Amendment claim lacks merit. As an initial matter, Petitioner has not requested the appointment of counsel in this habeas corpus proceeding. Moreover, Petitioner has no Sixth Amendment right to the appointment of counsel in this habeas corpus proceeding. *See Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993) (concluding that there is no Sixth Amendment right to effective assistance of counsel during state or federal habeas corpus proceedings); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996) (holding that a federal habeas petitioner "may not avoid [the Ninth Circuit's] holding that a petitioner is not entitled to effective assistance of counsel during habeas proceedings by alleging a due process, rather than a Sixth Amendment violation.") (citing *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993)). Likewise, Petitioner did not have a Sixth Amendment right to counsel during state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) (stating that "[t]here is no constitutional right to an attorney in state post-conviction proceedings.").

Finally, Petitioner's assertion that the State and its agents failed to comply with Arizona statutes or the Arizona constitution is not cognizable on habeas corpus review.

Such a claim is based on application of state law which is not subject to review by this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (stating that "a violation of state law standing alone is not cognizable in federal court on habeas.") (internal citation omitted).

### D. Ground Four

In his fourth ground for relief, Petitioner combines his first three claims. (docket # 1 at 9) None of Petitioner's claims individually provided a basis for granting Petitioner habeas corpus relief. Aggregating Petitioner's three claims does not change the nature of those claims, and does not entitle Petitioner to habeas corpus relief.

## IV. Conclusion

Based on the foregoing, the Court finds that the Petition should be denied because Petitioner's claims lack merit and he has failed to carry his burden under 28 U.S.C. § 2254(d).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven

days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 16th day of December, 2009.

/s/ Lawrence O. Anderson
Lawrence O. Anderson
United States Magistrate Judge